**Leland D. FOX, Appellant (Employee-Claimant below),**

**v.**

**HUBBARD DRILLING COMPANY, Appellee (Employer-Defendant below). (In the Matter of the Claim of Leland D. Fox, an Employee of Exploration Drilling Company— Workmen's Compensation.)**

**No. 3410.**

Supreme Court of Wyoming.

May 10, 1965.

Joseph Garst of Garst & Hand, J. Patrick Hand of Garst & Hand, Douglas, for appellant.

No appearance for appellee.

Before PARKER, C. J., and HARNSBERGER and McINTYRE, JJ.

McINTYRE, Justice.

This is an appeal by an employee from a Workmen's Compensation award. The award was based on a finding of 15-percent permanent partial disability. The employee claims all evidence on the subject fixed permanent partial disability at 25 percent and the award should have been on that basis.

Leland D. Fox, employee, received a back injury while working at drilling a water well for Hubbard Drilling Company. No contest was made against the right of Fox to be paid medical expenses and temporary total disability, but protests were made on behalf of the employer against the claim for permanent partial disability.

Following his injury, Fox was hospitalized at Ogden, Utah, and placed under the care of Dr. W. J. Gardner and Dr. C. D. Van Hook. His injury consisted of herniated Lumbar-3 and Lumbar-4 discs. An operation was performed to correct the damage. Upon release of the patient, Dr. Van Hook made a report in the compen-

sation case of the employee, in Fremont County, Wyoming. He also wrote a letter to Dr. Gordon Whiston, an orthopedic surgeon of Casper, Wyoming, to whom the case was at that time referred for further care.

In his report and in his letter to Dr. Whiston, Dr. Van Hook said Fox would have permanent partial disability from the injury; and that he would rate him at 25-percent permanent partial disability on the basis of having had a herniated L3 and L4 disc operation. Dr. Whiston examined the patient and examined X rays of his back. He then reported to the clerk of court that he would like to have Fox examined by a neurosurgeon. He said if it felt no further surgery can be of benefit to him, then a permanent partial disability rating would be advised. Apparently the function of the neurosurgeon was not to give a disability rating but to advise whether further surgery was indicated.

As a result of Dr. Whiston's suggestion, the workman was examined by Dr. L. E. Daniels, a neurosurgeon in Denver, Colorado. Dr. Daniels wrote a letter, reporting only that his examination was restricted and limited. He indicated he was suspicious of the symptoms and ended by stating: "If Mr. Fox had quit his faking, I might have worked out a segmental pattern of anesthesia."

Following the letter-report of Dr. Daniels, Dr. Whiston made a further report to the court. In it he referred to his physical examination and the report of Dr. Daniels. He stated that he felt from his own physical findings and later "from the neurological report from Dr. Daniels," that the patient should be given a permanent partial disability of 25 percent of the body.

At the hearing before the district court, Fox appeared and testified. We can understand from the transcript of his testimony that the trial court could very well conclude he was pretending or faking, as Dr. Daniels thought. Actually, Fox would not admit he could do work at all, other than light work such as raking leaves. But, was the witness pretending 75-percent disability instead of the 25-percent which the doctors say he has; or was he pretending 25-percent instead of the 15-percent which the court settled upon?

We fail to see how the court, from the evidence and from seeing the injured man, could tell. The injury in this instance was not one which the judge could physically see—like he might see a mangled or burned hand. Also, the court did not have a view of the X rays; and although Dr. Daniels suggested faking on the part of Fox, no attempt was made by him to say there was no disability or to say the disability would be less than 25 percent. For all we know, Fox was pretending, during his examination by Dr. Daniels, to be totally disabled.

We have no basis for assuming that Dr. Van Hook or Dr. Whiston was misled by any faking or pretending on the part of Fox. Both are experts in their field, and they must deal with fakers and pretenders continually in their work. In this case, as in most cases, they have the benefit of X rays and their own physical examinations. A faker cannot fool the X-ray machine, and surely a doctor who operates would not be fooled.

Moreover, Dr. Whiston had the letter from Dr. Daniels when he made his final report, and he indicated affirmatively that he was taking into consideration the report of Dr. Daniels in making his rating of 25 percent. His expert opinion, like that of Dr. Van Hook, was positive, definite and unequivocal. If there had been any testimony at all, or anything which the court could have viewed, which would have indicated no permanent disability or an amount of disability less than 25 percent, then the court would have been justified in finding a lesser amount of disability.

However, in the absence of anything to suggest that the doctors were wrong, and

in the absence of anything to contradict their testimony and expert opinions, we would not be justified in approving a figure which is wholly unsupported by the evidence.

Additional claims of relief on the part of appellant have been made. They are not, however, supported and are not allowed.

Reversed and remanded with instructions to enter an award for permanent partial disability in the amount of 25 percent.

GRAY, J., not participating.